**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.J.-1 and A.J.-2**

**No. 20-0824 and 20-0918** (Kanawha County 20-JA-26 and 20-JA-260)

**MEMORANDUM DECISION**

Petitioner Father J.J., by counsel Kevin P. Davis, appeals the Circuit Court of Kanawha County's September 24, 2020, order denying his request for an improvement period and terminating his parental rights to A.J.-2. Petitioner also appeals the circuit court's October 28, 2020, order denying his request for an improvement period and terminating his parental rights to A.J.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response and supplemental appendix in support of the circuit court's order. The guardian ad litem, Jennifer R. Victor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his request for an improvement period and terminating his parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the DHHR filed a child abuse and neglect petition against petitioner alleging that petitioner "engage[d] in domestic violence placing the infants in harm's way." Petitioner waived his preliminary hearing. The DHHR also alleged that petitioner was incarcerated for drug charges in Kanawha County. However, petitioner was eventually released during the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the children share the same initials, we will refer to them as A.J.-1 and A.J.-2, respectively, throughout this memorandum decision.

proceedings and spent a majority of the proceedings free from incarceration. Petitioner waived his preliminary hearing.

The circuit court held an adjudicatory hearing in May of 2020 wherein petitioner did not appear but was represented by counsel. The DHHR put on evidence that petitioner committed domestic violence against the mother of A.J.-2 several times while she was pregnant with the child, including one instance when she was receiving medical treatment at a hospital. The DHHR further alleged that some instances of domestic violence were perpetrated in the presence of another child who is not at issue in this appeal. A.L., A.J.-2's mother, testified that petitioner committed domestic violence against her on at least ten separate occasions during their relationship. The DHHR also put on evidence that petitioner tested positive for marijuana metabolites on several drug screens in February and March of 2020. The circuit court adjudicated petitioner as an abusing parent by clear and convincing evidence. The circuit court also ordered the DHHR to amend the petition to include petitioner's older child, A.J.-1, and his mother. Finally, the circuit court scheduled the dispositional hearing for August of 2020.

In June of 2020, the DHHR filed an amended petition naming petitioner as the father of A.J.-1 and asserting that he had engaged in severe domestic violence against the mothers of his children. The DHHR also alleged that petitioner had been adjudicated as an abusing parent in regard to A.J.-2. According to the petition, A.L. allowed petitioner to have recent, unsupervised contact with A.J.-2 despite "her testimony regarding [petitioner]'s extreme domestic violence of which she was the target, and despite a court order stat[ing] he was not allowed around the child unsupervised." The DHHR filed a second amended petition in July of 2020 alleging petitioner accompanied the mother of A.J.-1 on a vacation with the children. The DHHR alleged this contact occurred after the circuit court and a Child Protective Services worker warned petitioner that he was not permitted to have unsupervised contact with the children. The DHHR also alleged there was a picture on social media of petitioner and A.J.-1 at the beach during the same timeframe that the mother was on vacation at the beach.

In August of 2020, the circuit court held a preliminary hearing on the amended petitions, during which it ordered the DHHR to provide petitioner with services, including random drug screens and a psychological evaluation. The circuit court also ordered petitioner to pay child support for both children.

Prior to the dispositional hearing, the guardian filed a report recommending the termination of petitioner's parental rights as to A.J.-2 and that petitioner be adjudicated as an abusing parent of A.J.-1. The guardian noted that petitioner failed to cooperate with services provided to him. Specifically, the guardian noted that petitioner failed to "comply adequately with random drug screen protocols" and failed to attend his initial psychological evaluation appointment. The guardian's report also indicated that petitioner failed to pay child support as ordered and that he "d[id] not accept responsibility for his actions." The guardian noted that, during a multidisciplinary team meeting, petitioner denied abusing and neglecting the children; petitioner has a long history of domestic violence "as demonstrated by the many family court records submitted in discovery," and he has continued to engage in domestic violence with the mothers of A.J.-1 and A.J.-2 in the presence of the children. The guardian also indicated that A.J.-2 was too young to express any

preferences as to petitioner's parental rights. The guardian did recommend that both of the children's mothers receive post-adjudicatory improvement periods.

Petitioner's forensic psychological evaluation report was also provided prior to petitioner's dispositional hearing in August of 2020. According to the evaluation, petitioner's prognosis for the reliable attainment of minimally adequate parenting was determined to be poor "largely due to [petitioner]'s extensive history of anger dyscontrol, aggression, domestic violence, and apparent minimization of the same; history of involvement in volatile and chaotic interpersonal relationships; history of antisocial behavior and legal problems; history of substance abuse; and lack of independent housing." According to the report, petitioner indicated that there "'were always violence situations' in his relationship with [A.J.-2's] mother, and he indicated that the two of them 'would argue and push each other.'" This included one incident in which they "swung at each other." Petitioner acknowledged to the psychologist that he had been arrested nine times for domestic violence but maintained that most of the incidents involved false allegations against him. According to the report, petitioner also admitted he was once arrested for destruction of property after he broke an object during an altercation with a woman he was involved with. The psychologist noted that petitioner's responses "suggest an acknowledgement of important problems and the perception of a need for help in dealing with these problems . . . . However, the nature of some of these problems suggests that treatment would be fairly challenging, with a difficult treatment process and the probability of reversals." After the psychological evaluation, petitioner filed a second motion for a post-adjudicatory/post-dispositional improvement period.

In September of 2020, the circuit court held a hearing where it considered petitioner's motion for an improvement period and where the DHHR moved for termination of his parental rights to A.J.-2. The DHHR put on evidence in support of its motion, including the guardian's report recommending termination of petitioner's parental rights and the forensic psychologist's evaluation report. As a result of the evidence presented, the circuit court denied petitioner's motion for an improvement period. The circuit court found that petitioner failed to acknowledge any child abuse or neglect; failed to fully participate in services, including random drug screens; and was unlikely to comply with the terms and conditions of an improvement period. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of A.J.-2 to terminate petitioner's parental rights to that child. The circuit court also held an adjudicatory hearing as to A.J.-1 and found that petitioner committed domestic violence in the home in the presence of the child and had a significant history of domestic violence with numerous victims. As a result, the circuit court adjudicated petitioner as an abusing parent of A.J.-1. The circuit court scheduled a dispositional hearing regarding A.J.-1 for October of 2020.

The next month, the circuit court held a final dispositional hearing wherein the DHHR moved to terminate petitioner's parental rights as to A.J.-1. At the hearing, a CPS worker testified that there were multiple domestic violence petitions filed against petitioner, dating from 2016 to the present. The worker also testified that petitioner threatened to destroy property, held spouses or significant others hostage, physically assaulted them, and threatened to kill A.L., the mother of A.J.-2. The worker further noted that petitioner admitted to a history of domestic violence but continued to minimize it. The worker testified that petitioner also received anger management courses at the beginning of the proceedings but engaged in an altercation with A.L. shortly after

his release from incarceration. Finally, the worker testified that video visits with the children were discontinued after petitioner disobeyed a circuit court order that forbid him from physically visiting the children. Petitioner contended that "over half" of the domestic violence allegations against him were false and asked for an improvement period. Finally, petitioner testified that he was attempting to participate in domestic violence counseling but was unable to find a provider willing to accept him. After the presentation of evidence and testimony, the circuit court terminated petitioner's parental rights to A.J.-1. The court's October 28, 2020, dispositional order reflects this termination.[2] It is from this dispositional order that petitioner appeals. Petitioner also appeals the September 24, 2020, order terminating his parental rights to A.J.-2.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying his motion for a post-dispositional improvement period because he was "considerately successful in the entire process" and "made minimal mistakes near the end of the process and was punished severely for it." Petitioner argues that he passed all of his drug screens and that an improvement period would not have hindered permanency in this case. Petitioner also contends that he acknowledged a history of domestic violence and that he made numerous attempts to find domestic violence counseling. In light of these claims, he argues that the circuit court should have granted him a post-dispositional improvement period. We disagree.

West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court

---

[2]The mother of A.J.-2 is currently participating in an improvement period and retains her parental rights. The permanency plan for A.J.-2 is reunification with his mother. The mother of A.J.-1 is currently participating in an improvement period and retains her parental rights at this time; however the DHHR anticipates that her parental rights will be terminated at her dispositional hearing. Should reunification with the mother not occur, the permanency plan for A.J.-1 is adoption by his paternal grandparents.

has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Contrary to petitioner's argument, we see no error in the circuit court's determination that petitioner was not likely to fully participate in an improvement period. Critically, petitioner failed to fully participate in offered services, including random drug screenings. Further, while petitioner participated in some services, such as anger management counseling, his continued altercations and domestic violence demonstrate his failure to benefit from services. The evidence indicates that petitioner repeated the actions that led, in part, to his past criminal convictions. Petitioner argues that he acknowledged these domestic violence issues and indicated his intention to address them and fully participate in the improvement period. While it may be true that petitioner has previously acknowledged engaging in domestic violence, he has at other times flatly denied or minimized such abuse, even indicating at the final dispositional hearing that over half of his arrests for domestic violence were based on false allegations. Despite this evidence, petitioner asserts that he was wrongly denied an improvement period.

Based on the evidence presented below, the circuit court found that petitioner was unlikely to fully participate in an improvement period because he failed to participate in services during the case or acknowledge any child abuse and neglect. Petitioner committed severe and sustained acts of domestic violence throughout the proceedings—including against both mothers and in the presence of the children—and continued to minimize the same. The circuit court also ordered the DHHR to provide petitioner with remedial and reunification services, such as supervised visits, random drug screens, and a psychological evaluation. However, supervised visits were terminated early when petitioner failed to abide by the circuit court's orders. Petitioner also tested positive for controlled substances on some screens while failing to appear for other screens altogether. Further, petitioner missed his first appointment for a psychological evaluation, despite being repeatedly reminded, and failed to pay child support. While petitioner contends that nothing precluded the circuit court from granting him an improvement period in this case, he presents no evidence he would comply with an improvement period. Accordingly, we find no error in the circuit court's denial of his motion.

Next, petitioner alleges that the circuit court should have imposed a less-restrictive dispositional alternative pursuant to West Virginia Code § 49-4-604(c)(5). Petitioner argues that the termination of his parental rights was "based primarily on incarceration" and that he never

5

"beat, hurt, or presented the child[ren] to an unsafe environment." Finally, petitioner argues that "incarceration is not enough to dissolve the parental relationship and obliterate the bond between a father and child."

However, the evidence introduced during the proceedings below supports the circuit court's termination of petitioner's parental rights. First, petitioner erroneously asserts that the circuit court terminated his parental rights based on his incarceration. The circuit court did not cite petitioner's periods of incarceration when it terminated his parental rights. Rather, the circuit court cited petitioner's acts of domestic violence, both before and after his incarceration, and the fact that several of them were committed in the children's presence. Further, petitioner's psychological evaluation detailed that petitioner minimized responsibility for his actions, including domestic violence. While the abuse and neglect petition did reference petitioner's incarceration, he was not adjudicated upon this allegation and it was not a factor in the termination of his parental rights.

West Virginia Code § 49-4-604(c)(6) permits a circuit court to terminate parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. With these parameters in mind, it is clear that the record supports the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect, given his lack of candor with the court and service providers about domestic violence within the home, and his minimization of the abuse and neglect subjected upon the children. While it is true that petitioner may eventually partake in domestic violence counseling, any such possible improvement is based on pure speculation. Indeed, petitioner denied several incidents of domestic violence as false allegations throughout the proceedings. Further, petitioner often failed to avail himself of the DHHR's services, even at times when he was free from incarceration. The record shows that the children would have been at risk if returned to petitioner's care, given his poor decision-making throughout the proceedings. As such, it is clear that the children's welfare required termination of petitioner's parental rights.

Petitioner also takes issue with the timeframe from adjudication to termination, arguing that he should have been given additional time and an opportunity to demonstrate that he could correct the conditions of abuse and neglect. We have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's rights.

6

Lastly, because permanency has not yet been achieved for at least one of the children, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 24, 2020, and October 28, 2020, orders are hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton